ORIGINAL

**21 MAG 10255**

Approved: _/s/ Mitzi Steiner_
MITZI S. STEINER
SAMUEL P. ROTHSCHILD
Assistant United States Attorneys

Before:   THE HONORABLE BARBARA MOSES
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :   COMPLAINT
                                 :   Violation of
   - v. -                        :   21 U.S.C. § 841
                                 :
ARIEL CASTRO ARRENDONDO,         :
                                 :
              Defendant.         :   COUNTY OF OFFENSE:
                                 :   NEW YORK
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

WILLIAM REDDIN, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD") and a Task Force Officer with the Drug Enforcement Administration ("DEA") New York Drug Enforcement Task Force, and charges as follows:

**COUNT ONE**
(Narcotics Conspiracy)

1. On or about October 25, 2021, in the Southern District of New York and elsewhere, ARIEL CASTRO ARRENDONDO, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that ARIEL CASTRO ARRENDONDO, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that ARIEL CASTRO ARRENDONDO, the defendant, conspired to distribute and possess

with intent to distribute was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Detective with the NYPD and a Task Force Officer with the DEA New York Drug Enforcement Task Force, and I have been personally involved in this investigation. This affidavit is based on my investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my training and experience, my participation in this investigation, including my personal observations, my conversations with confidential sources working at the direction of law enforcement ("CS-1," "CS-2"), and my review of materials provided by CS-1[1] and CS-2[2], including consensually

---

[1] CS-1 has been providing information to law enforcement since in or about 2006. CS-1 was previously arrested for a narcotics offense, but the case was subsequently dismissed. CS-1 is providing information to law enforcement in exchange for financial benefits. Information provided by CS-1 has been found reliable and corroborated by, among other things, phone records and electronic evidence, and has led to multiple seizures of narcotics.

[2] CS-2 has pleaded guilty, pursuant to a cooperation agreement, to a federal criminal information charging him with participating in a narcotics conspiracy, possession of a firearm in relation to a drug trafficking crime, possession of a firearm as a felon, conspiracy to commit wire fraud, and the sale and possession of stolen property (the "Current Charges"). CS-2 is cooperating in an effort to obtain leniency at sentencing for the Current Charges. CS-2 was also previously convicted of narcotics offenses and a charge related to the sale of a stolen vehicle (the "Historical Charges"), and he served as a law enforcement source following his prior convictions of the Historical Charges. The Current Charges

created recordings of certain of the communications described below,[3] my conversations with other law enforcement agents, and my review of law enforcement reports and records, I have learned the following, among other things:

   a. In or around August 2021, CS-1 began communicating through a phone number (the "Phone Number"), with an individual subsequently identified as ARIEL CASTRO ARRENDONDO, the defendant, as described *infra*. Specifically, CASTRO ARRENDONDO and CS-1 engaged in drug-related conversations, including via the Phone Number and in person, in and around the Arizona area. In their initial conversations, they discussed, in substance and in part, a potential drug transaction in which CS-1 would sell cocaine to CASTRO ARRENDONDO. During one in-person meeting at which CS-1 was operating at the direction of a local Arizona law enforcement agency and was outfitted with a recording device, CS-1 showed CASTRO ARRENDONDO actual cocaine to demonstrate to CASTRO ARRENDONDO that CS-1 could in fact sell cocaine to CASTRO ARRENDONDO. A cocaine transaction was never completed.

   b. In subsequent conversations, CASTRO ARRENDONDO and CS-1 discussed, in substance and in part, a potential drug transaction in which CASTRO ARRENDONDO would sell CS-1 fentanyl, among other narcotics, in and around the New York City area. Specifically, in or around September 2021, CASTRO ARRENDONDO, an individual who CS-1 understood to be CASTRO ARRENDONDO's brother (the "Brother"), and CS-1 met in person. CASTRO ARRENDONDO and the Brother indicated to CS-1, in substance and in part, that they could in fact arrange for fentanyl, among other narcotics, to be supplied to CS-1 in and around the New York City area.

   c. On or about September 13, 2021, CASTRO ARRENDONDO, who was using the Phone Number, and CS-1, had a phone call, which CS-1 recorded. During that call, they discussed, in substance and in part, the details of a transaction in which CASTRO ARRENDONDO would sell CS-1 approximately 70,000 fentanyl pills for

---

arise from conduct that CS-2 engaged in while serving as a law enforcement source. Information provided by CS-2 in this investigation has been found reliable and corroborated by, among other things, recordings and events independently observed by law enforcement.

[3] The communications described below were predominantly in Spanish, which ~~the CS and I~~ **CS-1, CS-2, and the law enforcement agents reviewing the recordings** speak fluently. Descriptions of the communications included herein are based on draft translations.

approximately $7 per pill in and around the New York City area on or about September 17, 2021.

    d. On or about September 17, 2021, CASTRO ARRENDONDO informed CS-1, in substance and in part, that he obtained fentanyl pills directly from Mexico and that he would be unable to obtain fentanyl pills in time for the previously discussed narcotics transaction.

    e. In or around October 2021, CASTRO ARRENDONDO, who was using the Phone Number, and CS-1, had a series of phone calls, which CS-1 recorded. Specifically, CASTRO ARRENDONDO and CS-1 discussed, in substance and in part, the details of a narcotics transaction in which CASTRO ARRENDONDO would sell CS-1 approximately 60,000 "medicinas" (medicines), which based on my training and experience, I understand to be a reference to fentanyl pills, for approximately $10 per pill.

    f. On or about October 22, 2021, CASTRO ARRENDONDO, who was using the Phone Number, informed CS-1 that he would be prepared to proceed with the narcotics transaction as early as on or about October 23, 2021.

    g. On or about October 22, 2021, CASTRO ARRENDONDO, who was using the Phone Number, and CS-1, had a phone call, which CS-1 recorded. CASTRO ARRENDONDO explained, in substance and in part, that there were an additional six "platos chinos" (Chinese plates) that were on their way to New York, which based on my training and experience, I understand to be a reference to six kilograms of fentanyl. In addition, CASTRO ARRENDONDO informed CS-1 that there were an additional fifty-five thousand "seeds" on their way to New York, which based on my training and experience, I understand to be a reference to fifty-five thousand fentanyl pills. CASTRO ARRENDONDO, through the Phone Number, also texted CS-1 a photograph of a clear plastic bag that contained an unknown amount of blue pills, which based on my training and experience, I believe to be counterfeit oxycodone M30 pills, which are pills laced with fentanyl.

    h. On or about October 25, 2021, CASTRO ARRENDONDO, who was using the Phone Number, and CS-1, had a series of phone calls, which CS-1 recorded. Specifically, CS-1 told CASTRO ARRENDONDO, in substance and in part, that he would meet CASTRO ARRENDONDO that day at or near a location in Manhattan ("Location-1") at approximately 4:00 p.m. Further, CS-1 informed CASTRO ARRENDONDO, in substance and in part, that his worker would meet CASTRO ARRENDONDO at Location-1 in a black Toyota in order to

verify the narcotics and that CS-1 would be nearby with the money for the transaction.

i. Later that day, at approximately 5:00 p.m., law enforcement observed CASTRO ARRENDONDO, as well as two unidentified males (the "Individuals") in the vicinity of Location-1. CASTRO ARRENDONDO and the Individuals appeared to be engaged in countersurveillance of the area. At approximately 5:45 p.m., CS-1 called CASTRO ARRENDONDO, who was using the Phone Number, and had a phone call, which CS-1 recorded, in which CS-1 directed CASTRO ARRENDONDO to meet him at a second location ("Location-2"), which is in the immediate vicinity of Location-1. Subsequently, law enforcement observed CASTRO ARRENDONDO reach into a vehicle and pull out a black backpack (the "Backpack"). CASTRO ARRENDONDO then approached a black Toyota (the "Vehicle") in which CS-2 was located and entered the rear passenger side of the Vehicle. CS-2 inquired whether CASTRO ARRENDONDO had the "blue buttons," which based on my training and experience, I understand to be a reference to fentanyl pills. CASTRO ARRENDONDO responded affirmatively and handed CS-2 the Backpack, in which CS-2 observed blue pills. Further, CS-2 inquired about the incoming shipment of six kilograms of fentanyl and CASTRO ARRENDONDO stated, in substance and in part, that the narcotics were on their way and would be arriving in New York that evening or the following day. In addition, CS-2 inquired whether CASTRO ARRENDONDO could procure an additional one-hundred-thousand fentanyl pills, to which CASTRO ARRENDONDO responded affirmatively but stated that it would take some time. CASTRO ARRENDONDO was subsequently placed under arrest.

j. Law enforcement seized the Backpack, which was found to contain approximately sixty-thousand blue pills (the "Pills") in plastic Ziploc bags, depicted in the photo below:



k. Based on the appearance of the Pills, statements made by CASTRO ARRENDONDO regarding the consistency of the Pills, and my training and experience, I believe the Pills to be fentanyl pills. The Pills weighed approximately 4.66 kilograms.

l. At the time of the arrest, CASTRO ARRENDONDO had in his possession two cellphones, one of which rang when law enforcement officers dialed the Phone Number, as well as two identification documents with the name "Ariel Castro Arrendondo."

WHEREFORE, I respectfully request that ARIEL CASTRO ARRENDONDO, the defendant, be imprisoned or bailed, as the case may be.

TFO _____
William Reddin
Detective
DEA New York Drug Enforcement Task Force

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1 this
____ day of October, 2021

_____
THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6